**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 10-cv-03043-CMA

JOHN LOUIS ATKINS,

     Applicant,

v.

RENE G. GARCIA, Warden, FCI Englewood,

     Respondent.

---

## ORDER GRANTING APPLICATION FOR HABEAS CORPUS

---

The matter is before the Court on Applicant John Louis Atkins' Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, filed February 25, 2011 (Am. Application) (Doc. # 14), and his Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Sec. Application) (Doc. # 38) filed on May 26, 2011.  The Applications have been briefed, *see* Answer (Doc. # 42), Reply (Doc. # 46), Supp. Answer (Doc. # 48), and Supp. Reply (Doc. # 51) .  For the reasons stated below, it is hereby

ORDERED that Claims One and Four as set forth below are GRANTED.

## I. <u>BACKGROUND</u>

Applicant is a federal prisoner who was housed in the State of Colorado at the time he initiated this action.  Subsequent to filing this action, he was transferred to the United States Penitentiary in Leavenworth, Kansas.  Applicant currently is serving a

forty-six month sentence for being a felon in possession of a firearm in violation of 18

U.S.C. § 922(g)(1), which was entered by the United States District Court for the District

of Wyoming.  *See United States v. Atkins*, No. 09-cr-00029-WFD (D. Wyo. July 31,

2009).  According to Respondent, and Applicant does not deny, Applicant has a

projected release date of November 2, 2012, via good conduct time release.  *See*

Answer, Ex. A at Attach. 2.

## II. APPLICATION

Applicant submitted his first § 2241 Application to the Court on December 15,

2010, challenging the execution of his sentence.  (Application at 1-2.)  Pursuant to a

court order entered by Magistrate Judge Boyd N. Boland, Applicant filed an Amended

Application on February 25, 2011, that complied with Fed. R. Civ. P. 8 and identified

three claims.  Magistrate Judge Boland then directed Respondent to file a Preliminary

Response and address the affirmative defense of exhaustion of administrative

remedies, which Respondent did on March 21, 2011.  In the Preliminary Response filed

on March 21, 2011, Respondent asserted that Claims Two and Three are not properly

raised in a § 2241 action, and Claim One is not exhausted.

Applicant filed a Reply on April 13, 2011, and claimed interference by BOP staff

in his attempts to exhaust his administrative remedies with respect to Claim One.  Upon

review of Applicant's Reply, Magistrate Judge Boland determined that Applicant had

raised a legitimate claim of staff interference and instructed Respondent to brief the

alleged interference.  On May 5, 2011, Respondent filed a Response to the April 21

Order and waived the affirmative defense of exhaustion as to Claim One.  Also, on May 5, Mr. Atkins tendered a Second Amended Application that contains an additional or fourth claim.  Magistrate Judge Boland directed Respondent to file a Second Preliminary Response limited to addressing the affirmative defense of exhaustion of administrative remedies with respect to the additional claim.  On May 18, 2011, Respondent filed a Second Preliminary Response and stated he would not raise an affirmative defense as to the newly proposed claim.  Magistrate Judge Boland then ordered the Clerk of the Court to file the tendered Second Amended Application.

On May 26, 2011, the Court entered an order dismissing Claims Two and Three because the claims more properly are raised in a civil complaint filed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  The Court also directed Respondent to show cause why Claims One and Four should not be granted.  Respondent filed an Answer on June 15, 2011, and Applicant filed a Reply on July 1, 2011.

### III.  LEGAL STANDARD

A § 2241 habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (internal quotation marks omitted).  "A motion pursuant to § 2241 generally . . . [includes] such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison

3

disciplinary actions, prison transfers, type of detention and prison conditions."
*Hernandez v. Davis*, 2008 WL 2955856, at * 7 (D. Colo. July 30, 2008) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (internal quotations omitted).  "A[n] [application] under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity. . . ."  *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

A § 2241 application must be filed in the district where the prisoner is confined. 28 U.S.C. § 2241(a); *Bradshaw*, 86 F.3d at 166.  Here, Applicant correctly filed this Application in the District of Colorado, where he was incarcerated at the time of the initial filing.

The Court must construe liberally the Application filed by Applicant because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not act as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

## IV. <u>ANALYSIS</u>

### A.   CLAIM ONE

In Claim One, Applicant asserts that presentence jail credit time was not appropriately applied to his sentence under 18 U.S.C. § 3585(b)(2) and USSC Guideline 5G1.3(c).  Applicant contends that on December 6, 2008, he was arrested.  He further asserts that he was placed in the Johnson County (Wyoming) Jail and subsequently on December 19, 2008, was sentenced to 180 days in jail with nine days credited for presentence jail time.  Applicant further contends that on January 15, 2009, he was

4

indicted by the federal government for being a felon in possession of a firearm and a federal detainer was placed against him. Applicant asserts that he then was transported to the Natrona County Detention Center in Casper, Wyoming, on April 10, 2009, where he was arrested by the U.S. Marshals.

An initial appearance took place on April 13, 2009, in the U.S. District Court for the District of Wyoming. On July 28, 2009, Applicant was sentenced to forty-six months of incarceration. Subsequently, on August 7, 2009, his attorney in his state criminal case filed a motion for reduction of sentence with the Johnson County Court; the court granted the motion on August 13, 2009. Applicant also contends that the BOP has used August 13, 2009, as his sentence start date, basing all time computations on this date, which has had numerous detrimental effects on his prison status. Applicant further contends that the District Court of Wyoming intended for his state and federal sentences to run concurrent, which was documented in the transcripts, and he is entitled to presentence credit in his federal sentence for the time from April 10, 2009, until he was sentenced on July 28, 2009.

Upon review of Respondent's Answer, the Court found that Respondent had failed to address Applicant's assertion that the Johnson County Court in Wyoming had granted Applicant a reduction of his state sentence. The Court also noted that on March 18, 2011, the U.S. Attorney for the District of Wyoming filed a response to a motion to correct records filed by Applicant in the United States District Court for the District of Wyoming in his criminal case, *Atkins*, No. 09-cr-00029-WFD at Doc. # 60,

in which the U.S. Attorney conceded that Applicant's state sentence expired on April 10, 2009.  Respondent was ordered to brief this issue, which he did on July 29, 2011.

Respondent contends that the Johnson County order does not specify any sentence reduction period and appears only to have prospective effect.  As a result, Respondent concludes that the order does not affect the BOP's computation of Applicant's sentence.  Respondent further contends the U.S. Attorney does not have exclusive authority to calculate a prisoner's sentence and the BOP is not bound by the finding of the U.S. Attorney for the District of Wyoming that Applicant's state sentence expired on April 10, 2009.

Calculation of a federal prison sentence is governed by 18 U.S.C. § 3585.  That statute provides as follows:

(a)  Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b)  Credit for prior custody. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

(1)     as a result of the offense for which the sentence was imposed; or

(2)     as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585.  The Attorney General, through the BOP, has the responsibility for administering a prisoner's sentence under § 3585.  *See United States v. Wilson*, 503 U.S. 329, 334-35 (1992) (attorney general cannot avoid computing the credit in implementing a defendant's sentence).  The Attorney General's decision may be reviewed in a habeas corpus action pursuant to 28 U.S.C. § 2241.

In a Declaration attached to Respondent's Answer, Ms. Flagg attests and concedes that, prior to her review, Applicant was not receiving presentence custody credit.  Answer, Ex. B at 3.  As a result of her review, Ms. Flagg asserts that Applicant has been credited with fifty-one days of prior custody credit for the time from June 7, 2009, the day after he completed his state sentence, until July 27, 2009, the day prior to being sentenced.  *Id.*  Applicant acknowledges in his Reply to Respondent's Preliminary Response (Doc. # 26) that on March 17, 2011, he was informed by prison staff at FCI Englewood that he received the fifty-one days of prior custody credit.  Applicant, however, contends that the fifty-one days does not reflect the total time that the U.S. Parole and Probation identified in his presentence report that should be credited against his federal sentence, which at the time of the report and his July 16, 2009 sentencing was ninety-seven days.  Doc. # 26 at 2.

The Court has reviewed with great detail all briefing in this case and orders and filings by both the U.S. Attorney and Applicant in his criminal case, *Atkins*, No. 09-cr-00029-WFD.  First, the Court finds that on March 17, 2009, in Case No. 09-cr-00029-WFD, the federal government filed a motion for writ of *habeas corpus ad prose-*

*quendum.* Case No. 09-cr-00029-WFD at Doc. # 6.  The court then granted the motion

and issued the writ on March 23, 2009.  *Id.* at 7.  Although the particulars of the order

for writ prosequendum are not available to this Court, as the order was entered by the

sentencing court as a "Non-Public Document," the federal government clearly did not

have primary jurisdiction over Applicant at the time it requested his presence for the

initial appearance/detention hearing.  *See Weekes v. Fleming*, 301 F.3d 1175, 1181

(10th Cir. 2002) (noting that use of an ad prosequendum writ to gain custody indicates

the sovereign gaining custody is merely borrowing the prisoner from the sovereign with

primary custody).

 "The sovereign that first acquires custody of a defendant in a criminal case is

entitled to custody until it has exhausted its remedy against the defendant."  *See

Weekes*, 301 F.3d at 1180 (citing *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922)).  "This

rule of comity does not destroy the jurisdiction of the other sovereign over the

defendant; it simply requires it to postpone its exercise of jurisdiction until the first

sovereign is through with him or until the first sovereign agrees to temporarily or

permanently relinquish custody."  *Weekes*, 301 F.3d at 1180 (citations omitted).

 The issue that remains here is when the State of Wyoming's remedy against

Applicant was exhausted, which involves the time from April 10, 2009, until June 10,

2009.  The order entered by the Johnson County Circuit Court grants the motion for

reduction of sentence that Applicant's counsel had filed on his behalf.  Neither the

motion for reduction of sentence nor the order granting the reduction, however, identify

the specific amount of time that the sentence should be reduced.

In the burden of proof of showing a deprivation of rights leading to an unlawful

detention is on the applicant. *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *see also*

*Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (heavy burden placed on

applicant to show constitutional error in jury instruction). In support of his argument that

he is entitled to presentence credit from April 10, 2009, to either June 6 or June 10,

2009,[1] Applicant relies not only on the Johnson County Circuit Court's order granting his

motion for reduction of sentence, but also, on the presentence investigation report

entered in Case No. 09-cv-00029. In the presentence investigation report, the U.S.

probation officer states that Applicant has spent ninety-seven days, from April 10, 2009,

until July 16, 2009, in custody, which is a total of ninety-seven days that has not been

applied to any other criminal justice sentence. Respondent does not acknowledge the

details of the presentence report.

In the absence of clear evidence to the contrary, there is a presumption of

regularity that follows the official acts of public officers. *See United States v. Carney*,

106 F.3d 315, 318 (10th Cir. 1997) (case involves the information a probation officer

used in a presentence report) (citing *United States v. Chemical Foundation*, 272 U.S. 1,

---

[1]  The independent sentence computation Ms. Flagg refers to in the Affidavit does not
rely on the correct date for the commencement of Applicant's state sentence. Applicant has
provided the judgment and sentence entered in his State of Wyoming criminal case. Applicant
was sentenced on December 19, 2008, to six months of incarceration and was credited with
nine days of presentence time. Orig. Application (Doc. # 1) at 40. Ms. Flagg provides no basis
for finding that Applicant's sentence started on December 6, 2008, or ended on June 6, 2008.

14-15 (1926). Neither Applicant's motion for a reduction of sentence nor Johnson County Court's order granting the motion to reduce sentence provides clear evidence that Applicant is not entitled to the ninety-seven days of presentence credit as identified in the presentence report. Also, nothing in the Applicant's criminal case indicates that the government objected to the findings in the presentence report. Although Applicant concedes in his Amended Application that subsequent to the warrant issued for his arrest by the federal government on January 15, 2009, he was not able to earn good time credits, Am. Application at 4, there is at least one month that Applicant was held during which he could have acquired good-time credits. Ms. Flagg does not address the availability of good time credit in Applicant's state sentence. She attests in her Affidavit attached to Respondent's Supplemental Answer, Doc. # 48-1, that she contacted the Johnson County Jail and verified Applicant's sentence was completed on June 6, 2009. Ms. Flagg, however, does not define the term "completed," does not identify the person at the county jail with whom she spoke, and does not indicate whether that person was in a position of authority to certify the date that Applicant's state sentence was exhausted. Ms. Flagg, therefore, fails to provide clear evidence that the time from April 10, 2009, until at least June 6, 2009, was counted differently than what the presentence investigation report indicates.

Furthermore, although the federal government did not have primary jurisdiction over Applicant at the time it requested his presence at the initial appearance/detention hearing, there is nothing on the criminal docket providing clear evidence that contradicts

the finding in the presentence investigation report in Case No. 09-cr-00029  that the

Applicant was entitled to a total of ninety-seven days credit on his sentence.  Therefore,

the Court finds that Applicant has met his burden of showing a deprivation of rights

leading to an unlawful detention.

Respondent is directed to apply the presentence credit against Applicant's

federal sentence in accordance with the presentence investigation report submitted in

Applicant's criminal case, Case No. 09-cr-00029.  **Respondent is directed to file in**

**this action, within thirty days of the date of this Order, a copy of Applicant's most**

**current sentence computation statement that includes the additional presentence**

**credit time as identified above.**

The Court also finds that, although Applicant's concurrent sentence argument

lacks merit, it is unnecessary to address the merits of the argument based on the above

findings.

**B.      CLAIM FOUR**

In Claim Four, Applicant asserts that BOP staff has not given an adequate and

justifiable reason for denying his placement in a halfway house.[2]  Applicant further

contends that the BOP has adopted a seventeen to nineteen month time frame for

seeking placement in a halfway house, which does not allow a prisoner sufficient time to

exhaust his administrative remedies and be awarded the full twelve months as is the

---

[2] Halfway houses also are called residential re-entry centers ("RRCs") or community correction centers ("CCCs").

intent under the Second Chance Act (SCA).  As relief, Applicant requests that the Court require the BOP to place every eligible inmate in a halfway house for twelve months and provide six months of home confinement.

Respondent asserts that, in January 2011, BOP staff recommended that Applicant be placed in an RRC for the final 151 to 180 days of his sentence.  Applicant disagrees with that conclusion, contending that Congress, via passage of the SCA, "intended" that RRC placements should be for 12 months.

In 2007, Congress passed the SCA which provides that the BOP "shall, to the extent practicable, ensure that a prisoner . . . spends a portion of the final months of [a sentence] (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."  Prior to the SCA enactment, the statue provided that assignment to a halfway house would not exceed 6 months.  Thus, the SCA granted the BOP discretion to place soon-to-be-released inmates into halfway houses for longer periods of time.

After the enactment of the SCA, the BOP issued two memoranda (the "Memoranda") "providing guidance to its staff regarding the proper implementation of the amended statutes while BOP was undergoing formal rulemaking to revise more permanently its regulations."  *Garza v. Davis,* 596 F.3d 1198, 1202 (10th Cir. 2010). The Tenth Circuit Court of Appeals has described the Memoranda as follows:

> The first memorandum, issued on April 14, 2008, addressed the statutory changes following the Second Chance Act of 2007, emphasizing that the pre-release time frame for RRC and CCC had been increased to twelve months and that there was no percentage limitation on time to be served.

Additionally, the memorandum instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical time frame limitations on pre-release community confinement . . . are no longer applicable, and must no longer be followed."  Staff were instructed to review inmates for pre-release placements at an earlier time, *e.g.*, seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b). However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."

The second BOP memorandum, issued on November 14, 2008, addressed inmate requests for transfer to RRCs when more than twelve months remained from their projected release date (that is, non-prerelease inmates).  In relevant part, the memorandum instructed staff that they could not automatically deny a non-pre-release inmate's request for pre-release transfer, but must give each request individualized consideration. However, if an inmate were to request transfer prior to the pre-release time frame of twelve months, although staff must individually consider the request, they were instructed that there was "no need" to perform immediately the statutorily prescribed individualized review. Rather, the inmate should be informed that the request would be fully reviewed in conjunction with the next scheduled Program Review.  Staff were cautioned that they should not inform the inmate that he or she was ineligible for transfer because "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau Policy."  The second memorandum also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."'

*Id.* at 1202-03 (internal citations omitted).

The Memoranda does not conflict with the SCA.  *Ciocchetti v. Wiley,* 358

F. App'x 20, 24 (10th Cir. 2009).  In *Ciocchetti,* the applicant argued that the BOP was

categorically denying inmates' requests for transfers to halfway houses.  In response

to the applicant's argument, the Tenth Circuit determined that the Memoranda did not

conflict with the SCA for the following reason:

> As its memoranda clearly indicate, the BOP recognizes its authority to
> place inmates in RRCs and/or CCCs for periods of time exceeding six
> months; instructing BOP staff to individually consider each request for a
> transfer based on the factors set forth in § 3621(b) regardless of the time
> remaining on the requesting inmate's sentence.  Further, the fact that the
> regional BOP director must approve any inmate's assignment to a RRC or
> CCC which is greater than six months in duration, is of no consequence
> because this requirement in no way demonstrates a policy of categorical
> denial.

*Id.*

In *Bun v. Wiley,* 351 F. App'x 267, 268 (10th Cir. 2009), the Tenth Circuit

addressed a similar challenge to the Memoranda:

> Bun's argument that the new regulations are invalid also lacks merit.  He
> contends that two memoranda concerning the new regulations must be
> invalidated "because they conflict with Congressional intent in enacting [18
> U.S.C. §§ 3621(b) and 3624(c) ]."  However, as noted by the district court,
> these memoranda actually support Bun's contentions that inmates are
> eligible to be transferred to CCCs at any time and are authorized to serve
> up to twelve months in an RRC.  The first memorandum concerns inmate
> requests for transfer to CCCs and states that inmates are "legally eligible"
> to be placed in CCCs at any time during their prison sentence. The
> second memorandum recognizes that while the maximum pre-release
> RRC placement is twelve months, "Bureau experience reflects inmates'
> pre-release RRC needs can usually be accommodated by a placement of
> six months or less."  Before granting an RRC placement greater than six
> months, BOP staff are required to obtain the permission of the Regional
> Director.  Contrary to Bun's contentions, this requirement does not run
> afoul of § 3624(c).  That statute does not entitle prisoners to a twelve-
> month placement in an RRC.  *See* § 3624(c)(1).

14

Accordingly, this Court finds nothing in the SCA, or the BOP's policy memoranda relating thereto, that justifies Applicant's contention that 12 months of RRC placement is presumptively necessary or that seventeen to nineteen months is too short of a time frame before a projected release date to determine an RRC placement for a soon-to-be-released inmate.  Applicant's request for a twelve-month halfway house placement and six-month home placement for all inmates is denied.

The Court, therefore, need only review the BOP's placement decision.  The BOP is vested with broad authority to determine the length of a prisoner's RRC, but placement must be conducted in a manner consistent with 18 U.S.C. § 3621(b).  18 U.S.C. § 3624(c)(6)(A).  Section 3621(b) governs the transfer of inmates to other facilities, including halfway houses:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1)    the resources of the facility contemplated;
>
> (2)    the nature and circumstances of the offense;
>
> (3)    the history and characteristics of the prisoner;
>
> (4)    any statement by the court that imposed the sentence-
>
>> (A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

      (B)     recommending a type of penal or correctional facility as appropriate; and

(5)     any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Placement in a halfway house must also be "determined on an individual basis" and be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. §§ 3624(c)(6)(B) and (C).

The Court has reviewed both Respondent's Declaration by Robert French and the RRC Placement form, Doc. # 42-1, along with Applicant's July 1, 2011 Reply and attachments, Doc. # 46.  Although Mr. French attests that when Applicant was reviewed in January 2011 for RRC placement an individualized review was conducted, Mr. French has attached nothing in support of this claim or stated that Applicant was notified of the results of the review that took place in January 2011.  In other § 2241 actions that address RRC placements, *see Blandin v. Daniels*, No. 11-cv-00634-REB-BNB, Doc. No. 11-1 at 30 (D. Colo. filed Mar. 14, 2011); *see also, Zaring v. Wiley*, No. 09-cv-00943-PAB-KLM, Doc. # 20-1 at 7 (D. Colo. Mar. 9, 2010); *McCarther v. Davis*, No. 09-cv-02506-REB-BNB, Doc. # 12-1 at 22 (D. Colo. Dec. 21, 2010), a form is completed at the time an RRC review is conducted by the unit manager and the inmate is notified of the determination by the unit manager.  The "Review for Residential Reentry Center ***Second Chance Act of 2007 ***" form addresses all the factors identified under § 3621(b).

There also are concerns regarding the Institutional Referral for RRC Placement form that is attached to Mr. French's Declaration.  Answer, Ex. A at Attach. 4.  In the Declaration, Mr. French asserts that Applicant is scheduled to be placed at a halfway house in Casper, Wyoming.  The RRC Placement form does not indicate where the RRC placement is located; the form states only that Applicant will be released in Gillette, Wyoming.  The form also identifies Applicant's release date as January 17, 2013, whereas, Respondent states in the Answer, Doc. # 42, that Applicant's anticipated release date is November 2, 2012.

The RRC Placement form indicates that Applicant will need "aftercare supervision" regarding drug and alcohol use.  Ex. A at Attach 4.  Also, the form states that, at the time of the review, Applicant was not participating in substance abuse treatment, but notes that Applicant will need community-based outpatient and/or inpatient residential treatment.  Mr. French fails to address Applicant's need for continued drug and alcohol abuse treatment as stated in the RRC Placement form. Furthermore, the RRC Placement form generically states that Applicant will need transitional assistance in obtaining employment, transportation, and release funds, but does not specifically state that the RRC where he will be placed will support these needs.

Section 3621(b) also requires a consideration of the education programs completed, counseling completed, Financial Responsibility Plan participation, work performance, statement by the court that imposed the sentence and the resources of

the facility where Applicant was going to be placed.  Even though Mr. French stated

these items were considered nothing in the referral for RRC placement addresses any

of these considerations.  There is nothing in Mr. French's Declaration or the attached

RRC Placement Form supporting a finding that Warden Garcia's approval of the RRC

placement was based on an individual evaluation rather than a categorical time frame

limitation, which no longer is acceptable under the SCA.  The Court, therefore, directs

the BOP to conduct, within thirty days of the date of this Order, a second RRC

placement evaluation with respect to Applicant, that is in keeping with the SCA, under

18 U.S.C. §§ 3624(c)(6)(B) and (C) and § 3621(b).  Within ten days of approval of the

second RRC placement by appropriate prison staff members, Respondent shall file

in this case the results of the second RRC placement evaluation, including proper

documentation that an individualized review was conducted under § 3621(b) and in

keeping with the SCA.

The Court further notes that, as determined in the June 22, 2011 Order in this

action, although Applicant has been transferred to the federal prison facility located in

Leavenworth, Kansas, this Court's jurisdiction attached on the initial filing of this action

and is not destroyed by a transfer or custodial change.  *See Santillanes v. U.S. Parole*

*Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) (citing *Ahrens v. Clark*, 335 U.S. 188, 193

(1948)).  Since Respondent has not sought substitution of party, the U.S. Attorney, on

behalf of the BOP, and the currently named Respondent in this action, who agreed to

the transfer of Applicant to the Leavenworth facility, are responsible for implementing the directives in this Order.

## IV.  **ORDER**

Considering the entire record, the Court finds and concludes that Applicant is entitled to habeas relief.

It is ORDERED that Claim One as asserted in the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, filed on February 25, 2011, Doc. # 14, and Claim Four as asserted in the Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, filed on May 5, 2011, Doc. # 38, are GRANTED to the extent as stated above;

IT IS FURTHER ORDERED that Respondent and counsel for Respondent shall see that the directives set forth above are carried out as stated.

DATED:  September   08  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge